## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEROME BITTINGS SR**, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| **TELE-TOWN HALL, LLC**, a Virginia limited liability company, | |
| *Defendant.* | |

Plaintiff Jerome Bittings, Sr. ("Bittings" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Tele-Town Hall, LLC ("Defendant" or "Tele-Town Hall") to: (1) stop its practice of placing calls using an automatic telephone dialing system ("ATDS") to the cellular telephones of consumers nationwide without their prior express consent, (2) enjoin Defendant from continuing to place autodialed telephone calls to consumers who did not provide their prior express consent to receive them, or who revoked such consent, and (3) obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### ALLEGATIONS PURSUANT TO LOCAL CIVIL RULE 10.1

1.       The names and addresses of the parties to this action are as follows:

A.       Plaintiff Jerome Bittings, Sr. resides in Gloucester, County.

B.       Defendant Tele-Town Hall, LLC is a Virginia limited liability company with its headquarters located at 4600 North Fairfax Drive, Suite 802, Arlington, VA 22203.

## NATURE OF THE ACTION

2.     Defendant Tele-Town Hall is the creator and self-described "leading provider of telephone town hall events"[1] and offers several different products to businesses, government agencies, political candidates, and elected officials.

3.     Defendant's "Tele-Town Hall Event" system is described as a "personal communications tool with the power to help you interact live with thousands—even millions—of voters in minutes through a town-hall-style meeting conducted over the telephone and Web."[2]

4.     Defendant's Tele-Town Hall system "rapidly dials out to a list of phone numbers provided by your business," where the called numbers receive a "pre-recorded message inviting them to remain on the line if they wish to be transferred automatically to [a client's] Tele-Town Hall® event."[3]

5.     Defendant further notes that their Tele-Town Hall system:

utilizes a patented mass automated variable speed dialing system with a voice over IP (Internet Protocol) connection to dial out to thousands of phone numbers from a pre-selected list of participants, submitted to us by our customers…Every person who answers the phone will be played a pre-recorded Introductory Message that functions as an automated operator inviting each household to remain on the phone to participate in a Tele-Town Hall.[4]

6.     Defendant thus concedes that their Tele-Town Hall system is an ATDS within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA").

7.     Defendant also offers "Automated Announcement Calls" to clients.[5]

8.     Defendant's Automated Announcement Calls are billed as an:

automated 'Save The Date' call service option for candidates and organizations

---

[1] http://teletownhall.com/
[2] http://teletownhall.com/tele-town-hall-events
[3] *Id.*
[4] http://www.teleboardroom.com/tele-town-hall-safe-harbor-privacy-policy/
[5] http://teletownhall.com/automated-announcement-calls

that want to give their potential participants a reminder of an upcoming Tele-Town Hall® event. This puts the Tele-Town Hall® event top-of-mind for interested parties and allows them to schedule time to participate and craft any questions or communications they would like to provide your organization. 'Save The Date' Automated Calls have proven to be a valuable resource for increasing interest and viewership of Tele-Town Hall® events.[6]

9.      Defendant thus concedes that their Automated Announcement Calls are automated and/or pre-recorded calls with the meaning of the TCPA.

10.     Defendant also offers a product "Mobile Direct Access" to clients, which purports to be able to "[l]eave a voicemail for a cell phone subscriber without ever calling or ringing the subscriber's cell phone."[7]

11.     Defendant touts their Mobile Direct Access product as allowing a client to:

drop thousands of messages per hour. In addition, our Intelligent Reporting Software helps you keep track of who receives your messages by identifying which voicemail drops were successful, which were unsuccessful and why unsuccessful drops failed, so that you can update your contact list.[8]

12.     Defendant gives a peculiar reason for the very existence of the Mobile Direct Access product, stating that:

current telecom legislation impedes organizations—such as schools, health care providers, financial institutions and governments—from reaching the individuals with whom they need to connect. These regulations create a speech barrier to the more than 327 million cell phones registered in the U.S.[9]

13.     Defendant additionally publicly represents:

Tele-Town Hall has been abiding by the TCPA since our inception, even in cases when our users might be exempt from many of the regulations set forth in the law in order to insure the most positive experience for both our clients and their participants.[10]

---

[6] *Id.*
[7] http://teletownhall.com/mobile-direct-access
[8] *Id.*
[9] *Id.*
[10] http://teletownhall.com/blog/the-issues-the-fcc-really-needs-to-address

14.     Despite publicly professing to comply with the TCPA, Defendant conducted (and continue to conduct) a wide-scale telephone campaign that features the making of repeated unsolicited autodialed and/or pre-recorded telephone calls to consumers' cellular telephones— without consent, all in violation of the TCPA.

15.     While certain types of calls may be within the letter of the law for calls placed to landline ("wireline") telephones, the same calls to cellular ("wireless") telephones violate the TCPA where they are made without prior express written or oral consent. As explained by the Federal Communications Commission ("FCC") in its 2012 order:

> Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications, research or survey calls, and wireless usage notifications. Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers, but *require either written or oral consent if made to wireless consumers* and other specified recipients. [Emphasis added].
>
> *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (Feb. 15, 2012).

16.     Yet in violation of this rule, Tele-Town Hall fails to obtain any prior express consent (oral or written) to make the autodialed calls described herein to cellular telephone numbers.

17.     Consumer complaints about Tele-Town Hall's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- This number is an unwanted call that fills my answering machine!! I want it stopped.[11]

- Tied up my phone for over 30 minutes. Kept pressing end/off and would not

---

[11] http://800notes.com/Phone.aspx/1-202-759-9999

release my line. Not cool, what if we would have had an emergency![12]

- Called – and I pressed zeros but to no avail. Then hung up and tired to use my phone – STILL GOING – I yelled "Get off my phone" and it hung up. A Town Hall for something – didn't pay attention to what…..[13]

- Unsolicited GetUp town hall conference call[14]

- Just called us. Caller ID said "HALL, T", as if it were someone's name. We didn't recognize the # so picked up/hung up to break the call, BUT IT WOULD NOT STOP: it paused for a moment and then started ringing again. This has happened before. This is really scary; you can't get rid of these telepests even by hanging up on them! Isn't there a LAW against this, too?[15]

- I keep getting recorded phone messages from different phone numbers for David Trone for Congress. I don't even live in his 8th Congressional district so I could not vote for him if I wanted to!!!  Stupid, annoying people. I asked "Rich" at the website for David Trone for Congress yesterday to stop these phone calls but I got another one today from this 202 number. Don't politicians know that people HATE getting unsolicited calls, including political calls?   The spam, scam calls are bad enough but now we will have political calls until November!!![16]

- It's a political, recorded, really badly done robo-call about the open carry laws that recently passed in Texas.[17]

18.    By making the telephone calls at issue in this Complaint, Defendant caused

---

[12] *Id.*
[13] *Id.*
[14] https://www.shouldianswer.com/phone-number/2027599999
[15] http://800notes.com/Phone.aspx/1-202-759-9933
[16] *Id.*
[17] http://800notes.com/Phone.aspx/1-202-838-3284

Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls intentionally interfered with Plaintiff and the other Class members use and enjoyment of their cellphones, including the related data, software, and hardware components.

19.     The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

20.     Plaintiff Jerome Bittings, Sr. is a natural person and citizen of the State of New Jersey.

21.     Defendant Tele-Town Hall is a limited liability company incorporated and existing under the laws of the state of Virginia. Defendant is the creator and a leading provider of telephone town hall events. Defendant conducts business throughout this District, the State of New Jersey, and throughout the United States.

## JURISDICTION AND VENUE

22.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute.

23.     The Court has personal jurisdiction over Defendant because it solicits significant

consumer business in this District, has entered into business to business contracts in this District, and the unlawful conduct alleged in this Complaint occurred in and/or was directed to this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant solicits a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

25.     Defendant Tele-Town Hall is the creator of and a leading provider of telephone town hall events to businesses, associations, non-profit organizations, political candidates, and elected officials.

26.     Unfortunately for consumers, Defendant utilized (and continues to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of inviting, connecting, or reminding consumers about a Tele-Town Hall events, often times calling consumers on their cellular phones.

27.     In Defendant's overzealous attempts to service their clients, Defendant placed (and continue to place) phone calls to consumers that never provided consent to be called and to consumers with whom they have had no prior dealings or relationship.

28.     In placing the calls that form the basis of this Complaint, Defendant Tele-Town

Hall, or its affiliated entities, utilized an ATDS[18] in violation of the TCPA. Specifically, the hardware and software used by Tele-Town Hall has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Tele-Town Hall's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

29.     Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

30.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the National Do Not Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

31.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent

---

[18] It is without argument that Defendant uses an ATDS. *See* http://teletownhall.com/automated-outreach (Describing "Automated Outreach" to include "Automated Announcement Calls" and "Automated polling to your audience with efficient response collection"); http://teletownhall.com/click-to-call (Noting that "Tele-Town Hall's Click-To-Call helps associations, political campaigns and corporations directly connect their members, voters or employees [through] Live Calls or IVR Automated Calls inviting them to participate in surveys" and uses "Robo Calls with more information about key issues").

standards differ depending on what type of phone a telemarketer is calling.[19] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[20]

32.     In making the calls to consumers' cell phones without their prior written express consent, Defendant used an autodialer in violation of the Telephone Consumer Protection Act.

33.     Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the Do Not Call list.

34.     In making the phone calls at issue in this Complaint, Defendant and/or its agents utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

35.     Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF JEROME BITTINGS, SR.**

36.     On November 24, 2015, Plaintiff Bittings registered his cellular phone number on

---

[19] See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[20] https://www.neustar.biz/services/tcpa-compliance

the National Do Not Call Registry to avoid receiving unsolicited calls on his cellular phone.

37.     After Plaintiff Bittings registered his cellular phone number on the National Do Not Call Registry, Defendant Tele-Town Hall, either directly, or through its agents, made an unsolicited autodialed call on October 27, 2016 at approximately 10:30 AM.

38.     When he answered, there was a notable silence on the other end of the line for a moment, a hallmark sign that Defendant was and is using an ATDS. Several seconds later, the call was automatically disconnected by Defendant's ATDS.

39.     The October 27, 2016 call from Defendant displayed the number 202-759-9999 on Plaintiff's caller id. When calling this number back, a pre-recorded message identifies the number as belonging to Defendant.

40.     Plaintiff does not have a relationship with Defendant, has never provided his telephone number directly to Defendant, and has never requested that Defendant place calls to him or offer its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to him and has no business relationship with Defendant.

41.     Defendant at all times is and was aware that the above-described autodialed telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them.

## CLASS ALLEGATIONS

42.     **Class Allegations**: Plaintiff Bittings brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the class defined as follows:

> **<u>Autodialed No Consent Class</u>**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's cellular telephone number; and (3) for whom Defendant

claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

43.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

44.     **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

45.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c)     Whether Defendant made the calls with the use of an ATDS; and

    (f)    Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

47.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

48.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a respective whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a respective whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a respective whole, not on facts or law applicable only to Plaintiff.

49.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective

relief from Defendant's misconduct. Even if members of the Class could sustain such individual

litigation, it would still not be preferable to a class action, because individual litigation would

increase the delay and expense to all parties due to the complex legal and factual controversies

presented in this Complaint. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court for the Class. Economies of time, effort and

expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

50.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51.     Defendant made unsolicited and unwanted telemarketing calls to telephone

numbers belonging to Plaintiffs and the other members of the Autodialed No Consent Class—

without their prior express written consent—in an effort to sell its products and services.

52.     Defendant made the telephone calls using equipment that had the capacity to store

or produce telephone numbers to be called using a random or sequential number generator,

and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

53.     Defendant utilized equipment that made the telephone calls to Plaintiff and other

members of the Autodialed No Consent Class simultaneously and without human intervention.

54.     By making unsolicited telephone calls to Plaintiff and members of the Autodialed

No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS,

Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

55.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the

Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the

unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

56.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jerome Bittings, Sr., individually and on behalf of the Class, prays for the following relief:

1.     An order certifying the Class as defined above, appointing Plaintiff Jerome Bittings, Sr. as the representative of the Class and appointing his counsel as Class Counsel;

2.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

3.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

4.     A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6.     An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7.     An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Class;

8.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.     An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10.    An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

11.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12.    Such other and further relief that the Court deems reasonable and just

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,


**JEROME BITTINGS, SR.**, individually and on behalf of all others similarly situated,

Dated: December 27, 2016        By: /s Stefan Coleman
                                    One of Plaintiff's Attorneys

Stefan Coleman
law@stefancoleman.com
Adam Savett
adam@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
1072 Madison Ave, Ste 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946